IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID J. BROWN, | ) | CASE NO. 1:11-CV-02765 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN, LAKE ERIE CORR. INST. | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner David J. Brown filed this habeas corpus action pursuant to 28 U.S.C. § 2254.

Doc. 1.  Brown challenges the constitutionality of his conviction and sentence in *State of Ohio v.*

*David Brown,* Case No. 2008CR509535 (Cuyahoga County).  In that case, a jury found Brown

guilty of attempted murder with firearm specification; felonious assault with firearm

specification; and having a weapon while under a disability.  Doc. 9-1, p. 81.  The trial court

sentenced Brown to eight years in prison.  Doc. 9-1, p. 32.

On December 21, 2011, Brown filed a petition for writ of habeas corpus, setting forth

nineteen grounds for relief.  Doc. 1, pp. 5-15.  This matter has been referred to the undersigned

Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  For the

reasons set forth below, the undersigned recommends that Brown's petition for writ of habeas

corpus (Doc. 1) be **DENIED**.

## I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).

The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2878 (2009). The Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio, set forth the facts underlying Brown's conviction as follows:[1]

{¶ 7} The victim, Anthony Doss, testified that in April 2008, he was living with his mother on East 141st Street in Cleveland, Ohio. He became friends with Brown in 2007 when Brown and his wife, Nora, moved into the house across the street. The Browns introduced Doss to Leothia Scott, who worked with Nora. Doss and Scott began dating after that.

{¶ 8} According to Doss, his friendship with Brown and Nora began to deteriorate when Brown asked Doss to take responsibility for a condom that Nora found in their home. The condom belonged to Brown, but Doss agreed to take the blame for it. After that, Doss stated that he did not feel comfortable being around Nora, and so he stopped going to the Browns' home.

{¶ 9} In the middle of the afternoon in April 2008, Doss explained that he was on the sidewalk in front of his house when Brown yelled to Doss from his porch across the street, "I can't help it if you fucked things up with your bitch." Doss became angry at what Brown said about his "woman" and was "ready to start a fight." Doss began to walk toward Brown's house and as he did, he pulled his cell phone off of his belt to put it in his pocket and began to take off his shirt to fight. But when Doss got to the middle of the street, Brown came "down off of his porch, reach[ed] in his back, and pulled out a gun and started shooting." Doss believed Brown shot at him "about six times"; Doss was hit three times, in both legs and in his stomach. Doss said he turned around and "slowly walked" back to his house, and Brown shouted to him, "you don't walk up on nobody, Tone."

{¶ 10} Doss further stated that when he got back to his porch, he could see Troy Clark, who was standing on Brown's porch during the shooting, run "around the side" of Brown's house. Doss also saw Cleveland Blade, standing behind Brown's truck (parked on the same side of the street as Doss's house) with a shotgun, but he did not see Blade shoot the gun.

{¶ 11} Doss spent three-and-a-half weeks in the hospital as a result of being shot. He said that he gave a statement to Detective Legg when he was in the hospital, but that he was on heavy medication for pain at that time. Doss further testified to

---

[1] The facts are taken from the Eighth District Court of Appeals' decision *State v. Brown*, 2010-Ohio-661 (Ohio Ct. App. Feb. 25, 2010). Brown has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d at 397.

having three prior drug offenses, and that he spent three years in prison from 2003 to 2006.

{¶ 12} Doss testified on cross-examination that he had not had any alcohol prior to the shooting. Later, when confronted with the fact that his medical records showed he was "inebriated," Doss first admitted to having "a beer," and then admitted to having a "couple cans of beer."

{¶ 13} Shena Davenport testified that in April 2008,[2] she lived on East 141st Street. She lived directly across the street from an apartment building, which was next to Brown's home. Davenport knew Brown from living across the street from him, but not very well. She did not know Doss at all.

{¶ 14} On the day in question, she heard an argument outside her window. She looked outside and saw Doss and Brown arguing. Brown was standing in front of the apartment building across the street from her house, and Doss was standing on the sidewalk on the same side of the street as Davenport's. She watched as Doss began to walk across the street toward Brown, and "[a]s soon [as] he started walking across the street[,] [Brown] went in his back of his shirt * * *, pulled the gun out and started-pow, pow, pow-started shooting." Davenport said that she heard five shots, and she did not see Doss with a gun. She further stated that she saw Brown's son in the front yard when the shooting occurred.

{¶ 15} Samone Matthews, Doss's brother's girlfriend, testified that prior to the shooting, Brown had been on his front porch with another man and they were "signifying through music" toward Doss, which she explained meant that they were directing rap songs in a negative way toward Doss.

{¶ 16} Matthews explained that she was in the kitchen when she heard the first gunshot. She ran outside and saw Brown pointing a gun at Doss and saw Doss trying to run around a truck that was parked there. She saw Blade near the same truck with a "sniper rifle." She only heard three shots; she did not see Brown shoot the first shot, but she did see him shoot the other two.

{¶ 17} Christopher Doss, Doss's brother, testified that he was also in the kitchen when he heard the shots being fired. He ran out and saw Brown pointing a gun at his brother but did not see Brown shoot the gun. He saw another man "[i]n front of a white truck holding a rifle," but he did not know his name.

{¶ 18} The state further called Troy Clark as a witness. Clark testified that he saw Doss with what looked like a gun when he was beside a truck. The state immediately obtained permission from the court to treat Clark as a hostile witness because Clark's testimony differed from what he originally told police. In his statement to police, Clark said that he never saw Doss with a gun. Clark further

---

[2] Davenport testified that the shooting occurred in May 2007.  But she gave her written statement to police regarding the incident in April 2008.

told the police in his statement that after the shooting, Brown was walking around in circles in his backyard, and that Brown told Clark to hide the gun. Clark testified that he did not remember telling the police that. Clark said he lied to the police because he was scared. He testified that Brown hid the gun under the back porch. But Clark said he took the gun from under the porch and "threw it behind the garage next door" because he was scared. When police came, he told them where it was.

{¶ 19} Police collected five spent shell casings in front of the apartment building beside Brown's house and found a Ruger P95DC .9 millimeter gun behind a garage two houses down from the apartment building. Test results showed that the shell casings were all fired from the .9 millimeter handgun. Brown's fingerprints were found on the gun and two live bullets remained in the gun when it was found. Police also found a spent pellet on the victim's porch that had blood on it (because it had fallen out of Doss's side where he had been shot). The spent pellet also corresponded to the spent shell casings.

{¶ 20} Detective Darrell Johnson testified that he arrived at the scene about an hour after the shooting. He processed the scene. He took three gunshot residue samples from Brown, Clark, and Blade. On cross-examination, he explained that he did not take one from Doss, however, because none of the witnesses indicated that Doss had fired a gun or even had a gun that day.

{¶ 21} Brown stipulated to (1) the Bureau of Criminal Identification and Investigation ("BCI") report evidencing that he, Clark, and Blade tested positive for gunshot residue, (2) the Cleveland Forensic Lab report showing that the spent casings from test firing the weapon found matched casings found at the scene, (3) a forensic laboratory report indicating that fingerprints lifted off the gun used in the crime matched Brown's fingerprints, and (4) to Brown's prior misdemeanor conviction for attempted preparation of drugs for sale.

{¶ 22} The state rested and Brown moved for a Crim.R. 29 acquittal, which the trial court denied.

{¶ 23} Brown presented three witnesses on his behalf and testified himself. Nora, Scott, and Brown all testified that on the day of the shooting Scott and Nora were working together and that Scott and Doss were fighting that morning because Scott wanted her belongings from Doss. Scott told Doss to give her gold chain to Brown, but Doss did not know that Scott had talked to Brown.

{¶ 24} Nora also stated on cross-examination that Brown called her at work while he was in the police car and told her that "Lee's boyfriend shot at me." And Brown later admitted to her that he shot at Doss, but said it was in self-defense.

{¶ 25} Robert Blue also testified for Brown. He lived in the apartment building next to Brown (where the shell casings were found). He said he was talking to

4

Cleveland Blade on his front steps right before the shooting. Brown was outside and Doss was on the other side of the street. Brown and Doss were "having words," and then Doss began to walk across the street toward them. Blue said that Doss completely crossed the street and was standing in front of his apartment building. Doss began to take his jacket off, and Brown stepped off the porch "like he was going to pull off his jacket," but then they both put their jackets back on. Blue said that at that point, Doss said something "menacing" and "made a gesture like he was going to pull something out" of his belt. Blue said when he saw Doss do that, Blue took off running. By the time he got to the back of his apartment building, he heard the shots.

{¶ 26} Brown explained that on the day of the shooting, he and Clark were hanging out and playing music, but it was not "fighting music." Blue and Blade were also there. Around 2:10 p.m ., Brown said that Doss came out and said, "what's up, dog?" Brown replied, "same shit, different smell." Doss then said, "I'm crazy. * * * I'm tired of people being in my business." Brown said, "happen to bring me the chain?" At that point, Doss said, "I'll shoot your ass," and then Doss fired the first shot. Brown said the shot went right "past Cleveland Blade." Blade ran, Clark grabbed Brown's son, and Brown said he ducked his head and shot "down toward the ground." Brown said the first shot was Doss's, but the next three were his. Brown explained that he was not shooting at Doss, but at the ground. He testified that he never told police that he shot in self-defense because he had the right to remain silent.

{¶ 27} On cross-examination, Brown admitted that he had previously been convicted of two felonies, intimidation and felonious assault.

*State v. Brown*, 2010-Ohio-661 (Ohio Ct. App. Feb. 25, 2010).

## II. Procedural Background

### A. State Conviction

Brown was found guilty, after a jury trial, of attempted murder with firearm specification; felonious assault with firearm specification; and having a weapon while under a disability. Doc. 9-1, p. 81.  The trial court sentenced Brown to eight years in prison.[3]  Doc. 9-1, p. 32.

---

[3] The trial court determined that the attempted murder and felonious assault convictions merged for purposes of sentencing.  The trial court also found that the attached firearm specifications merged for the purposes of sentencing. The trial court imposed a 3-year prison term for the firearm specifications to be served prior to and consecutive with a 5-year prison term for the base charge for an aggregate total of eight years in prison.  Doc. 9-1, Ex. 14.

**B.  Direct Appeal**

On February 13, 2009, Brown filed a Notice of Appeal to the Eighth District Court of Appeals of his conviction and sentence.  Doc. 9-1, Ex. 15, p.25.  In his Brief, he presented three assignments of error:

> **"First Assignment of Error**: Trial counsel provided ineffective assistance by failing to bifurcate the weapon under disability charge and by stipulating to the Gun Powder Residue Report because the failures deprived Mr. Brown of a fair trial.
>
> **Second Assignment of Error**: The trial court denied Mr. Brown his due process rights by denying Mr. Brown's Motion for Judgment of Acquittal because the evidence is insufficient to support the guilty verdict for attempted murder.
>
> **Third Assignment of Error**: Finding Mr. Brown guilty of attempted murder and felonious assault is against the manifest weight of the evidence."

Doc. 9-1, Ex. 16, p.51.  On August 17, 2009, the State filed a responsive brief.  Doc. 9-1, Ex. 17.  On February 25, 2010, the Eighth District Court of Appeals issued its opinion affirming the judgment of the trial court.  Doc. 9-1, Ex. 18.

**C.  Motion for new trial**

On May 20, 2010, Brown, *pro se*, filed a motion for new trial.  Doc. 9-1, Ex. 19. Brown argued that newly discovered evidence relating to the mental health of Doss created a strong probability of a different outcome in his case had the evidence been presented to the jury at his original trial.  *State v. Brown*, 2011-Ohio-1080 (Ohio Ct. App. Mar. 10, 2011).  Brown set forth four issues for review:

1. Whether[4] the trial court deprived Mr. Brown a fair trial under U.S.C.A. where the courts fail to instruct the jury of Mr. Brown peers on (mental health) determination admissibility, (creditablitys) whether court error in its (irregularity) by not giving (instruction on inferior offence).

---

[4] "Whether" is <u>consistently</u> misspelled as "Wheather" and "trial" is misspelled as "trail" throughout the documents filed by Brown *pro se*.  Those misspellings have been corrected in quotations contained in this R&R but no other corrections have been made.

2.  (2) Whether prosecution (misconduct) occurd and denied Mr. Brown (Due Process). Whether prosecution deceived the judge and the jury for not revealing very-very important about the creditability about Mr. Anthony Doss.  Whether the prosecution (deleberately surpress) the vistim mental compassity.  Whether prosecution new Anthony Doss was a (MDO) Mental Disorder Offender.

3.  (3) Whether the (new evidence) discovered would change the out of this case…Whether being diagnose with a psychotic disorder deem creditable.

4.  (4) Whether (procedural errors) occurd.  Whether being allow to testify under medication is constitutional.  Whether taking a statement under pain kills then indited under that statement is constitutional.

Doc. 9-1, Ex. 19, p. 107.  In an entry dated June 3, 2010, the trial court denied the motion for

new trial.  Doc. 9-1, Ex. 21.

The trial court appointed counsel for Brown's appeal.  Doc. 9-1, Ex. 38.  Appointed counsel

filed a timely notice of appeal.[5]  Doc. 9-1, Ex. 22.  In his merit brief, Brown raised the following

assignment of error:

1.  The trial court erred by summarily denying Appellant-Defendant David Brown's Motion for New Trial without considering the merits and without conducting a hearing.

Doc. 9-1, Ex. 27, p. 147.  The state filed an opposition brief.  Doc. 9-1, Ex. 28.  On March 10,

2011, the appellate court affirmed the lower court's judgment, finding that the trial court did not

abuse its discretion when it denied Brown's motion for a new trial without a hearing.  Doc. 9-1,

Ex. 29.

**D. Application to Reopen Appeal (Ohio App. R. 26(B))**

On the same day that Brown filed the motion for new trial, May 20, 2010, he also filed, *pro*

*se,* an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B).  In his

---

[5] Counsel erroneously thought he was appointed for the purposes of direct review and filed a motion for delayed appeal indicating he was appealing from the judgment of conviction and sentence entered in February 2009.  Doc. 9-1, Ex. 22.  The appellate court denied the motion for leave to file a delayed appeal as moot and pointed out that counsel was appointed to appeal the denial of a motion for new trial.  Doc. 9-1, Ex. 23 & 24.  Counsel moved to supplement the record with the direct appeal transcripts.  Doc. 9-1, Ex. 25.  The appellate court granted the motion to supplement the record.  Doc. 9-1, Ex. 26.

application, Brown alleged that appellate counsel was ineffective for failing to raise the

following assignments of error:

1. Speedy Trial Right

2. Inferior offenses:  2903.12(A)

3. Wrongfull Prosecution. 2305.02/ 2743.48

4. Instruction. 2903.12/ 2945.482

5. Police Misconduct.

6. State Witness. 2939/ 2935.03(62)/ 2151.011

7. Testimony. 2947.06(B) 2151.425

8. Inditment. 2941.54

9. Tempe w/evidence. 2923.31/ 2921.12/ 2913.42.

10. 5th Amendment.

11. Civil Rights.  USCA 1983.

12. Ineffective Appeal Counsel.

13. Freedom of Speech.

14. Procedural Error (Irregulairty). 2305.02 A(5)

15. Transcripts. 135.33

16. Prosecutorial Misconduct.

17. Error of law occurring at trial.  2305.02 A(5).

Doc. 9-1, Ex. 30, p. 188.  The state filed a brief opposing Brown's 26(B) application.  Doc. 9-1,

Ex. 31.  Brown filed a reply.  Doc. 9-1, Ex. 32.  On January 11, 2011, the court of appeals denied

Brown's application to reopen because the application exceeded the ten-page limit established by

Ohio Appellate Rule 26(B)(4) and because Brown's claim of ineffective assistance of appellate

counsel was without merit.  Doc. 9-1, Ex. 33, 34.

Brown, *pro se*, filed a timely notice of appeal to the Ohio Supreme Court. In his notice of appeal, Brown argued that he was appealing from January 11, 2011, judgment of the appellate court. Doc. 9-1, Ex. 24. In his memorandum in support of jurisdiction, Brown set forth the following propositions of law:

1.  Trial counsel provided ineffective assistance by failing to bifurcate the weapon under disability charge and by stipulating to the gun powed residue report because the failures deprived mr brown of a fair trial.

2.  The trial court denied mr, brown his due process rights by denying mr, brown motion for acquittal because the evidence is insufficient to support the guilty verdict for attempted murder.

3.  Finding mr, brown guilty of attempted murded and felonious assault is against the manifest weight of the evidence.

4.  The trial court erred by summarily denying appellant-defendant david j browns motion for new trial with-out considering the merits and without conducting a hearing.

5.  When new evidence material to the defense was discovered, which the defendant could not with reasonable diligence have discovered and produced at trial.

Doc. 9-1, Ex. 36, p. 241. On April 11, 2011, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. Doc. 9-1, Ex. 37.

**E. Federal Habeas Corpus**

On December 20, 2011, Brown *pro se* signed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. In his petition, Brown presents nineteen grounds for relief:

**Ground One:** Ineffective assistance by failing to bifurcate the weapon under disability charge and by stipulating to gun powder residue report the failure deprived mr, brown a fair trial.

**Ground Two:** The trial court denied mr, brown his due process right by denying acquittal because evidence is in insufficient to support the verdict for attempted murder.

9

**Ground Three**:  Whether finding Mr, Brown guilty of attempted murder and felonious assault is against the manifest weight of the evidence./and attempted murder and felonious assault be the same charge!

**Ground Four**:  Motion for a new Trial & New evidence was discovered.

**Ground Five**: <u>SPEEDY – TRIAL RIGHTS</u>.  Mr, Brown was not brought to trial in 90 days, Mr, Brown did not wave his nor was he told his rights were waved, Court must jouralize its contenuence with a time stamp in its journal, judge Russo J. ran for thy ohio SUPREM COURT in 2008 with-out a visiting judge these UNNESSARY DELAYS were hold at my request (CRUEL & UNUSAL PUNISHMENT) = lying over 200 days.

**Ground Six:**      <u>INFERIOR-OFFENSES</u>. Jury instruction must be given on inferior offense under any review of evidence, The trier could have been found guilty of a lesser offence.

**Ground Seven:** <u>WRONGEFULL-PROSECUTION</u>. Mr, Brown has the right to inspect records & documents under civil rule prosecution <u>SIPRESS</u>  vital information that would deem 4 of the state witness <u>uncreditable</u>  all having mental health issues and receiving SSI for there condition, state new victum ANTHONY DOSS was a violated offender since 2003 but fail to mention this to a jury of my peers.

**Ground Eight:** <u>THE TRIAL COURT PROVIDED IRREGULARITY IN ITS INSTRUCTION</u>.  In the proceedings by not giving the instruction to the jury on determination or the testimony of the mental ill.  The jury never new the victim had a <u>PSYCHOIC-DISORDER</u>  and dionose  with <u>SCHIZOPHERA</u>.

**Ground Nine:**      <u>POLICE-MISCONDUCT</u>.  False filing of records or reports/useing statements from a psychoic person under pain killers and medication, using these statements to <u>INDITE</u> <u>CAUSING NUMDERIOUS AMENMENTS TO THY INDITMENT</u>e@  the trial level police are uncertain on how records became changed.

**Ground Ten:**   <u>STATE-WITNESS</u>. All receive ssi for there  mental health issue, All are uncreditable anthony doss/christopher doss/samone Matthews/troy clark/shena davenport.

**Ground Eleven:** <u>TESTIMONY.</u> Determining the disposition of anthony doss/a dionosed violate mental offender.

**Ground Twelve:** <u>TEMPER WITH EVIDENCE</u>.  Judges are useing  there  authority to deprive individuals a fair trial by removing vital evidence in favor of the defendant from jury deliberation.

**Ground Thirteen:** <u>MIRANDA-RIGHTS</u>.  All united states citizen have the right to remain silent at question  with-out the presence of a attoney, and should not be used against you at the trial level for doing so.

**Ground Fourteen:** <u>CIVIL-RIGHTS</u>.  Discrimination-being called a jamican west indian because of a hair style, when in fact I was born a US citizen.

**Ground Fifteen:** <u>FREEDOM OF SPEECH</u>.  Prosecution states that playing music arbitrate my self-defense claim this music did not infringe on the victum liberty or freedom and not physically threaten his well being or life.

**Ground Sixteen:** <u>PROCEDURAL ERRORS IN ITS IRREGULARITY</u>.  Allowing the testimony of the mental ill/not given instruction on the mental ill/inferior offenses/incorrect-inditment/amending thy indictment durning the trial, when prosecution has nemberious pretrials to do so/under minding  the trial at vor  dire by mention haveing  a weapon under disability/accepting an impaired statement for and inditment/allowing victum  to take the stand under medication.

**Ground Seventeen:** <u>TRANSCRIPTS</u>.  By attempting to rewrite or modify the records for the prosecution benefit arbitrates thy effectiveness of an appeal, My transcrits  has  been and are incomplete and words were put in my mouth by the record. is unbelievable check against the tape of the court rooms.

**Ground Eighteen:** <u>PROSECUTION-MISCONDUCT</u>.  Prosecution amitts  to inconsistency at trial=lying dout .

**Ground Nineteen:** <u>ERRORS OF LAW OCCURING AT REAIL</u>.  All 19 of these violation mention.


# III. Law

## A.  Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Brown's habeas petition because he filed it after the effective date of the AEDPA.  28 U.S.C. § 2254.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  A state court's adjudication only results in an "unreasonable application" of clearly established federal law when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011)).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.  Exhaustion and Procedural Default**

Under the AEDPA, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

**Exhaustion.**  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas

petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.*  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal

habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

### C. Cognizability

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). A federal court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation omitted). Claims of state law error are not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution."  *Cristine v. McKee,* 526 F.3d 888, 897 (6th Cir. 2008).

## IV.  Claims Analysis

### A.  Claims Overview

Petitioner sets forth nineteen Grounds for relief. Respondent contends that all Nineteen Grounds of Brown's habeas petition are procedurally defaulted and, therefore, barred from federal habeas review.  Doc. 9, pp. 29-36.  Respondent also argues that Grounds Three, Four, Six, Eight, Nine, Ten, Eleven, Twelve, Fourteen, Fifteen, Sixteen, and Nineteen are not cognizable in habeas review.  Doc. 9, pp. 16-24.  For the reasons explained below, the undersigned concludes the following:

- Ground One is without merit.

- Ground Two is without merit.

- Ground Three is not cognizable.

- Ground Four is not cognizable.

- Grounds Five through Nineteen are procedurally defaulted.

Accordingly, the undersigned concludes that federal habeas relief should be denied.

### B.  Ground One

In Ground One, Brown argues that his trial counsel was constitutionally ineffective for two reasons:  (1) by failing to bifurcate the weapon under disability charge; and (2) for stipulating to the gun powder[6] residue report.  Doc. 1, p. 5.  Brown presented this claim on direct appeal to the Eighth District Court of Appeals in his first assignment of error.  Doc. 9-1, Ex. 16, pp. 55-59. Brown did not appeal the Eighth District's February 25, 2010, order to the Ohio Supreme Court

---

[6] Brown's petition states "gun power residue report;" however, a review of the records reveals that it was the gun *powder* residue report that was at issue.  See Doc 9-1, Ex. 16, p. 49, 55.

within the 45-day time period proscribed by Ohio Supreme Court Rule of Practice

7.01(A)(1)(a)(i)[7].

Respondent asserts that Brown still has the opportunity to file a motion for leave to file a

delayed appeal.  Doc. 9, p. 30. Ohio S. Ct. Prac. R. 7.01(A)(4), provides:

> (a) In a felony case, when the time has expired for filing a notice of appeal in the
> Supreme Court, the appellant may file a delayed appeal by filing a notice of appeal and a
> motion for delayed appeal that complies with the following requirements:
>    (i)     The motion shall state the date of entry of the judgment being appealed
>            and the reasons for the delay;
>    (ii)    Facts supporting the motion shall be set forth in an affidavit;
>    (iii)   A copy of the court of appeals' opinion and the judgment entry being
>            appealed shall be attached to the motion.

Courts in this District have held that a petitioner's federal habeas claims are not exhausted where

he may yet file a motion for delayed appeal in the Supreme Court of Ohio and, therefore,  has a

potential remaining state avenue of relief. *See Dunford v. Tibbals,* 3:11CV2028, 2013 WL

5726083 (N.D. Ohio Oct. 21, 2013) (petitioner's claims are unexhausted and not defaulted

because he arguably still had a remedy of a motion for delayed appeal); *Williams v. Bobby,* No.

1:06CV2032, 2007 WL 2156402, at *7 (N.D.Ohio, July 25, 2007), unpublished (third and fourth

grounds for relief not exhausted because petitioner still had remedy of motion for delayed appeal

to Supreme Court); *contra, Mills v. Hudson,* No. 3:08CV1974, 2009 WL 2232858, at *6

(N.D.Ohio July 22, 2009) (finding that, since petitioner has no right to raise his actual claims in

the motion for delayed appeal but must first petition the court for permission to raise the claims,

it is not an "available" remedy under 28 U.S.C. § 2254(c), which states that a state remedy is

"available" if petitioner has the right under state law to "raise ... the question presented").

---

[7] S.Ct.Prac.R. 7.01(A)(1)(a)(i), "To perfect a jurisdictional appeal from a court of appeals to the Supreme Court as
defined by S.Ct.Prac.R. 5.02(A), the appellant shall file a notice of appeal in the Supreme Court within *forty-five
days* from the entry of the judgment being appealed. The date the court of appeals filed its judgment entry for
journalization with its clerk, in accordance with App.R. 22, shall be considered the date of entry of the judgment
being appealed." (emphasis added)

The Court need not decide that issue, however, because Ground One can be dismissed on the merits.  The AEDPA explicitly provides that, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C.A. § 2254 (b)(2).

**Merits Review**

To succeed on a claim of ineffective assistance, a defendant must establish "both that 'counsel's representations fell below an objective standard of reasonableness,' and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Smith v. Spisak,* 558 U.S. 139, 154, 130 S. Ct. 676, 175 L. Ed. 2d 595 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 669, 104 S. Ct. 2052, 2055, 80 L. Ed. 2d 674 (1984)).

**1.  Bifurcation**

Brown first asserts that his trial counsel was ineffective for failing to bifurcate his weapons while under disability charge.  Doc. 1, p. 5.  The appellate court assumed, for purposes of argument only, that counsel should have bifurcated the weapons while under disability charge but held Brown's counsel to have been effective because,  applying the second *Strickland* prong, there was "no reasonable probability" that bifurcating the charge would have changed the outcome of the proceedings.  Doc. 9-1, p. 90.  The appellate court stated,

> By not bifurcating the having weapons while under a disability charge, the jury was privy to the fact that in 2001, Brown attempted to prepare drugs for sale, and was convicted of a misdemeanor. That means the jury knew before any testimony was given that Brown allegedly had a gun when he was prohibited from doing so because of a prior misdemeanor attempted drug trafficking conviction. In an attempted murder and felonious assault case (especially where both the victim and the accused were convicted felons), we do not see how Brown was prejudiced by the jury having this information. Thus, we find that the outcome of the trial would not have been different if the jury had not known that Brown had a prior misdemeanor drug conviction and that he was not supposed to have a weapon.

18

*State v. Brown*, 2010-Ohio-661 (Ohio Ct. App. Feb. 25, 2010).

Brown does not show how the state court's decision is contrary to clearly established U.S. Supreme Court precedent.  The state court applied the governing law, *Strickland*, in rejecting Brown's claim of ineffective assistance of counsel.  A federal habeas court may grant a writ if the state court identifies the correct governing legal principle from the U.S. Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000).  Here, the state court did not unreasonably apply *Strickland* to the facts of Brown's case

If a federal habeas court fails to find either prong of the *Strickland* test satisfied, a writ will not issue.  *Bell v. Cone*, 122 S.Ct. 1843 (2002).  Thus if there was no prejudice, a habeas court need not determine whether there was deficient performance by counsel.  *Strickland*, 466 U.S. at 697.  The Sixth Circuit has held that the test for the prejudice prong under *Strickland* is whether counsel's errors have likely undermined the reliability of, or confidence in, the result.  *West v. Seabold*, 73 F.ed 81, 84 (6th Cir. 1986); *citing Lockhart v. Fretwell*, 506 U.S. 364 (1993).  "Counsel is constitutionally ineffective only if [his or her] performance below professional standards caused the defendant to lose what he otherwise probably would have won."  *United States v. Morrow*, 977 F.2d 222 (6th Cir. 1992).  Brown does not meet this standard.

Anthony Doss, Sheena Davenport, Samone Matthews, and Christopher Doss (the victim's brother) all testified that they witnessed Brown pointing a gun at Doss.  Doc. 13, pp. 30, 33-35, 100-101, 108, 138-140, 159, 260.  All of those witnesses, except for Christopher Doss,[8] also testified that they saw Brown shoot Doss.  Id.  Brown took the stand in his own defense and

---

[8] Christopher Doss was inside when the shooting occurred outside.  He came outside only after Anthony Doss was already shot and saw Brown holding a gun and screaming.  Doc. 13, 257-264.

admitted to shooting a gun at the ground near Doss.  Doc. 13, p. 415.   Brown also testified at trial that he owned the gun illegally.  Doc. 13, p. 437.

The decision not to bifurcate the weapons charge did not prejudice Brown.  The fact that the jury was able to find out that it was against the law for Brown to own a gun based on his prior record would not likely have changed the verdict on the attempted murder or felonious assault charges based on all of the other evidence presented.  Accordingly, counsel's failure to bifurcate the weapons under disability charge did not prejudice Brown and the state court did not unreasonably apply *Strickland* to the facts of Brown's case.

### 2.  Stipulating to Gun Residue Report

Brown next contends that his trial counsel was ineffective for stipulating to the gun powder residue results.  Doc. 1, p. 5.  The appellate court assumed, for purposes of argument only, that counsel should not have stipulated to the gun residue report.  Doc. 9-1, p. 93.   The Court went on to find,  under the second *Strickland* prong, that there was "no reasonable probability" that having a lab analyst testify to the report would have changed the outcome of the trial.  Doc. 9-1, p. 93.  The appellate court stated:

> The report noted, inter alia, that a positive test result could indicate that the person *either* shot a firearm, *or* was in the vicinity of a firearm when it was discharged. Brown testified that he shot the gun, but acted in self-defense, claiming that Doss fired the gun first. But no spent shell casings were found except for the ones that were fired from Brown's gun (the five spent shell casings that were recovered matched the .9 millimeter gun that had Brown's fingerprints on it). And all of the spent casings were found in front of the apartment building-exactly where Davenport (the only objective witness) testified that she saw Brown standing when he shot Doss five times. Finally, Davenport did not see Doss with a gun.
>
> Moreover, Brown seems to be arguing that a lab analyst could have assisted the jury with understanding that the gun residue on Blade's hands could have come from Blade being near Doss when Doss supposedly shot first. Thus, Brown claims this could have helped his self-defense claim. But Blue-one of Brown's witnesses-testified that Blade was standing beside him on the front steps of the apartment building. This testimony placed Blade closer to

Brown when he shot the gun, not Doss.[9] Thus, we cannot find the testimony of the forensic analyst would have assisted the jury in this case such that the outcome of the trial would have changed.

*State v. Brown*, 2010-Ohio-661, ¶¶44, 45 (Ohio Ct. App. Feb. 25, 2010).

The state court's decision was not unreasonable. Davenport testified that she witnessed Brown fire his gun at least five times at Doss.  Doc. 13, pp. 100-101, 108.  This testimony is consistent with the physical evidence in the case.  Detectives found five spent shell casings in front of the building where Davenport testified that she saw Brown standing when he shot Doss. *State v. Brown*, 2010-Ohio-661, ¶¶44, 45 (Ohio Ct. App. Feb. 25, 2010). Those casings matched the .9 millimeter gun that had Brown's fingerprints on it. *Id*.  In addition to Davenport's testimony, Samone Matthews testified that she  heard a gunshot, went out to Doss' porch, and witnessed Brown shoot Doss two times.  Doc. 13, pp. 138-140, 159.  Brown also took the stand and admitted to shooting a gun at the ground near Doss.  Doc. 13, p. 415.   Brown testified that Doss shot at him first, but missed.  Doc. 13, p. 415, 417.   No other witnesses supported Brown's testimony that Doss fired a gun.

If a federal habeas court fails to find either prong of the *Strickland* test satisfied, a writ will not issue.  *Bell v. Cone*, 122 S.Ct. 1843 (2002).  Thus, a habeas court need not determine whether there was deficient performance by counsel if there was no prejudice from the allegedly deficient performance.  *Strickland*, 466 U.S. at 697.  The Sixth Circuit has held that the test for prejudice under *Strickland* is whether counsel's errors have likely undermined the reliability of, or confidence in, the result.  *West v. Seabold*, 73 F.ed 81, 84 (6th Cir. 1986); *citing Lockhart v. Fretwell*, 506 U.S. 364 (1993).  "Counsel is constitutionally ineffective only if [his or her]

---

[9] "It is hard to decipher from reading the transcript where everyone was standing when the shooting occurred. Brown's testimony seemed to try to place Blade near Doss, but it is not at all clear. At trial, Brown used a drawing or board to illustrate where Blade and Doss were standing, but that drawing is not in the record on appeal."
*State v. Brown*, 2010-Ohio-661 (Ohio Ct. App. Feb. 25, 2010)

performance below professional standards caused the defendant to lose what he otherwise probably would have won." *United States v. Morrow*, 977 F.2d 222 (6th Cir. 1992).  Brown does not meet this standard.  Based on the eyewitness testimony and its consistency with the lab findings, counsel's decision to stipulate to the gun residue report did not prejudice Brown. Accordingly, the state court did not unreasonably apply *Strickland* to the facts of Brown's case and Ground One is without merit.

### C.  Ground Two

In Ground Two, Brown argues that the trial court violated his due process rights because the evidence was insufficient to support the jury's verdict finding him guilty of attempted murder. Doc. 1, p. 7.[10]  Brown raised  this claim as his second assignment of error on direct review to the Eighth District Court of Appeals (Case No. 92814).  Doc. 9-1, Ex. 16, pp. 59-60.  Brown did not appeal the Eighth District's February 25, 2010, judgment affirming his conviction to the Ohio Supreme Court within the 45-day time period proscribed by Ohio Supreme Court Rule of Practice 7.01(A)(1)(a)(i).  Thus, Brown failed to exhaust his Ground Two claim.

Respondent asserts that Brown still has the opportunity to file a motion for leave to file a delayed appeal to the Ohio Supreme Court.  As discussed more fully in Ground One, the Court need not decide if Brown still has a remedy remaining as the AEDPA explicitly provides that, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C.A. § 2254 (b)(2).

### Merits Review

On federal habeas review, a state court's determination regarding a sufficiency of evidence claim is entitled to a "double layer" of deference.  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir.

---

[10] Brown does not argue Ground Two in his Traverse, only his petition.

2008).  The first layer of deference goes to the factfinder; the second goes to the state reviewing court as required by the AEDPA.  *Id.*  As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due to the jury's finding of guilt because the standard announced in *Jackson v. Virginia* is whether, "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. 307 (1979); *Brown v. Konteh*, 567 F.3d at 205. This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Jackson*, 443 at 319.

The second layer of deference goes to the state appellate court.  Even if the federal habeas court believes that a rational trier of fact could not have found guilt beyond a reasonable doubt, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).  A claim that the evidence was constitutionally insufficient to support a conviction is a mixed question of law and fact.  *Starr v. Mitchell*, 234 F.3d 1270, at *3 (6th Cir. 2000) (unpublished).  Thus, "a writ of habeas corpus may be issued for evidence insufficiency only if the state court adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' 28 U.S.C. §2254(d)(1), or was based on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' 28 U.S.C. §2254(d)(2)." *Id.*

Reviewing Brown's sufficiency of the evidence claim, the state court of appeals stated:

{¶ 48} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such

evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jenks* at 273, 574 N.E.2d 492.

{¶ 49} Brown maintains that the state did not prove that he purposely attempted to cause Doss's death because (1) the evidence showed Doss "was about to pull a weapon from his belt"; (2) Brown retreated while he was firing the gun; and (3) the evidence pointed to "the wildly firing and erratic movements by Mr. Brown."

{¶ 50} To the extent that Brown's arguments rely on his claim that he acted in self-defense, those arguments are irrelevant to a sufficiency argument. In a sufficiency argument, this court is reviewing whether, when viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. *Jenks,* supra, at 273, 574 N.E.2d 492. Self-defense is an affirmative defense that must be proven by the defendant. *State v. Harrison,* 10th Dist. No. 06AP-827, 2007-Ohio-2872, ¶ 23. Proving self-defense does not negate an element of the offense, rather, it acts as a defense for committing the elements of the offense. *Id.* Thus, arguing that a defendant acted in self-defense is not an argument that should be made in reference to a sufficiency argument.

{¶ 51} Regarding his other arguments, essentially claiming that the state did not prove that he acted purposefully, and thus, did not present sufficient evidence on attempted murder, we disagree.

{¶ 52} In order to convict a person of attempted murder, the state must prove that the defendant acted purposefully in attempting to take the life of another. R.C. 2903.02. A jury may find intent to kill where the natural and probable consequence of a defendant's act is to produce death, and the jury may conclude from all of the surrounding circumstances that a defendant had a specific intention to kill. *State v. Clark* (1995), 101 Ohio App.3d 389, 405, 655 N.E.2d 795. The state presented evidence that Brown fired his gun at least five times at the victim (through Davenport's testimony), and that the victim was hit by three of those five shots. A natural and probable consequence of shooting at a person is that the person will be shot and killed.

*State v. Brown*, 2010-Ohio-661 (Ohio Ct. App. Feb. 25, 2010).

The state court's decision was not unreasonable.  In the present case, there was sufficient

evidence presented at trial for a rational trier of fact to conclude beyond a reasonable doubt that

Brown committed the crime of attempted murder. *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D.

Mich. 2002). Davenport's testimony that she witnessed Brown fire his gun at least five times at Doss was consistent with the physical evidence and lab result findings.  Doc. 13, pp. 100-101, 108.  In addition to Davenport's testimony, Samone Matthews testified that she heard a gunshot, went out to Doss' porch, and witnessed Brown shoot Doss two times.  Doc. 13, pp. 138-140, 159.  Brown also took the stand and admitted to shooting a gun at the ground near Doss.  Doc. 13, p. 415.   Brown testified that Doss shot at him first, but missed.  Doc. 13, p. 415, 417.  No other witnesses supported Brown's testimony that Doss fired a gun.

A habeas court does not reweigh the evidence or redetermine the credibility of the witnesses.  *Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  In addition, circumstantial evidence alone may be sufficient to support a conviction.  *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (internal citation omitted).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Gall v. Parker, 231 F.3d 265, 286 (6th Cir.2000).*  Sufficient evidence existed to convict Brown of attempted murder.  Accordingly, Ground Two is without merit.

**D.  Ground Three**

In Ground Three, Brown argues "whether finding [him] guilty of attempted murder and felonious assault [was] against the manifest weight of the evidence and attempted murder and felonious assault be the same charge."[11]  Doc. 1, p. 8.  Respondent argues, and this Court agrees, that Brown's manifest weight of the evidence claim is not cognizable on federal habeas review. *See Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1976). "A 'manifest weight of evidence' claim, which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of

---

[11] Brown's Traverse contains no arguments on Ground Three but in his Petition, he indicates that the basis of his contention is that the evidence supported his claim of self-defense.

state law only," *Brown v. Moore*, 2008 WL 4239160, *8 (S.D. Ohio 2008) (citing 28 U.S.C. §

2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1998)).  For the foregoing reasons, Brown should be

denied federal habeas relief on Ground Three.

### E.  Ground Four

In Ground Four, Brown states, "Motion for new [trial] & new evidence was discovered."

Doc. 1, p. 10.  Brown supports his claim by arguing that the trial court erred by denying his

motion for new trial without a hearing based on new evidence relating to the mental health of a

states witnesses.  Doc. 1, p. 10.  Brown does not raise a federal constitutional claim in Ground

Four.

Even if the Court were to construe Ground Four as a claim that the trial court violated

Brown's due process rights by not conducting an evidentiary hearing, Brown's claim is not

cognizable because it relates to a post-conviction proceeding.  The law establishing the non-

cognizability of post-conviction proceeding claims was discussed by this Court in *Farrow v.*

*Anderson,* 1:08CV1429, 2009 WL 3004024 (N.D. Ohio Sept. 15, 2009):

> ... [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are
> outside the scope of federal habeas corpus review. [12] *See Kirby v. Dutton,* 794 F.2d 245, 246-
> 47 (6th Cir.1986;) *Roe v. Baker,* 316 F.3d 557, 571 (6th Cir.2002). The Sixth Circuit has
> clearly held that claims challenging state collateral post-conviction proceedings cannot be
> brought under the federal habeas corpus provision, 28 U.S.C. § 2254, because the essence of
> habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the
> traditional function of the writ is to secure release from illegal custody.  *Kirby,* 794 F.2d at
> 246 (*quoting Preiser v. Rodriguez,* 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439
> (1973)); *see also Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539
> (1987) (States have no obligation to provide this avenue of relief, and when they do, the

---

[12] With respect to motions for new trial under Ohio Criminal Rule 33, the Sixth Circuit recently held "that when a state defendant files a motion for new trial before filing a direct appeal, and when the denial of that motion is then consolidated with and reviewed during the direct appeal, the motion for new trial is part of the original criminal proceedings and is not a collateral proceeding."  *Pudelski v. Wilson*, 576 F.3d 595, 610 (6th Cir. 2009).  Brown's direct appeal concluded by April 12, 2010, when he failed to appeal to the Ohio Supreme Court the appellate court's decision affirming his conviction.  Brown did not file his motion for new trial until more than a year after he filed his direct appeal and his appeal from the denial of his motion for new trial was not consolidated with his direct appeal.  Therefore, consistent with *Pudelski*, Brown's post-appellate motion for new trial was  a part of the state's collateral review process.

fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.)

A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention. *Kirby,* 794 F.2d at 247. Though the ultimate goal in a case alleging post-conviction error is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement. *Id.* at 248. Accordingly, the Sixth Circuit has held repeatedly that the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings, noting that the writ is not the proper means to challenge collateral matter as opposed to the underlying state conviction giving rise to the prisoner's incarceration. *Id.* at 248, 247; *see also Alley v. Bell,* 307 F.3d 380, 387 (6th Cir.2002) (error committed during state post-conviction proceedings can not [sic] provide a basis for federal habeas relief (*citing Kirby,* 794 F.2d at 247)); *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir.2001) (habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief) (quotations omitted).

*See also, Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir.2007).

Because Ground Four alleges an error in a post-conviction proceeding, it is not cognizable in federal habeas review.  Accordingly, Brown should be denied federal habeas relief on Ground Four.

### F.  Grounds Five through Nineteen

Respondent argues, and this Court agrees, that Brown's Grounds Five through Nineteen are procedurally defaulted.  Brown did not present Grounds Five through Nineteen to the state court of appeals on his direct appeal.  Doc. 9-1, Ex. 16.  Brown presented only three claims on his direct appeal, i.e., an ineffective assistance claim, an insufficiency of the evidence claim, and a claim that the verdict convicting him of attempted murder and felonious assault was against the manifest weight of the evidence.  Doc. 9-1, Ex. 16, p. 49.  Those claims were reviewed in Grounds One through Three above and determined to be without merit and/or not cognizable.

A claim is adequately raised on direct appeal if it was "fairly presented to the state court." To fairly present a claim to state court a petitioner must assert both the *legal* and factual basis for

his or her claim." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Brown did not assert

either the legal or factual basis for Grounds Five through Nineteen to the state court.

Accordingly, Brown is now procedurally barred from obtaining habeas review on those claims.

When a petitioner has failed to fairly present his claims to the state courts and no state

remedy remains, his claims are considered to be procedurally defaulted. *Gray v. Netherland,* 518

U.S. 152, 161–62 (1996); *Graves v. Howerton*, 12-6045, 2013 WL 6068592 (6th Cir. Feb. 28,

2013) *cert. denied,* 13-6484, 2013 WL 5309247 (U.S. Dec. 2, 2013).  Title 28 U.S.C. § 2254(b)

bars the granting of habeas corpus relief "unless it appears that the applicant has exhausted the

remedies available in the courts of the State." Because "[t]his requirement ... refers only to

remedies still available at the time of the federal petition," it is satisfied "if it is clear that [the

habeas petitioner's] claims are now procedurally barred under [state] law," *Gray,* 518 U.S. at

161-62 (quoting *Engle v. Isaac,* 456 U.S. 107, 125, n. 28, 102 S.Ct. 1558, 1570, n. 28, 71

L.Ed.2d 783 (1982) and *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103

L.Ed.2d 380 (1989)).

Brown's Grounds Five through Nineteen are clearly procedurally barred under state law.

Where an argument could have been raised on an initial appeal, res judicata dictates that it is

inappropriate to consider that same argument on a second appeal.[13]  *State v. D'Ambrosio*, 73

Ohio St.3d 141, 143, 1995-Ohio-129, 652 N.E.2d 710; *State v. Gillard*, 78 Ohio St.3d 548, 549,

1997-Ohio-183, 679 N.E.2d 276.  Based on the application of res judicata Brown would be

procedurally barred under Ohio law from pursing these claims in state court.  Accordingly,

Brown is procedurally barred from obtaining habeas relief on Grounds Five through Nineteen.

---

[13] The Sixth Circuit has determined that "the application of *res judicata* is an adequate and independent state ground justifying foreclosure of constitutional claims in habeas." *Mason v. Mitchell,* 320 F.3d 604, 628 (6th Cir.2003); *Clement v. Kelly,* 1:13-CV-00389, 2013 WL 6048743 (N.D. Ohio Nov. 14, 2013).

Because Brown procedurally defaulted Grounds Five through Nineteen, this Court may review those grounds only if he can demonstrate either cause and prejudice for the default, *see Gray,* 518 U.S. at 162 ("[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground[14] for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."); *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

**Cause and Prejudice.**  "Habeas petitioners…must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell,* 440 F.3d 754,764 (6th Cir. 2006).  Cause requires a peititioner to show a substantial reason to excuse the default and failure to comply with the state procedural rule. *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006).  Brown did not present any evidence or argument to establish cause for his default. In addition, Brown did not present any evidence or argument to establish prejudice, nor has he demonstrated that the procedural default should be overcome on the ground that there will be a fundamental miscarriage of justice if his claims are not heard, i.e., that he is actually innocent. *Lundgren*, 440 F.3d at 764 ("A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'") (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

---

[14] The Sixth Circuit has determined that "the application of *res judicata* is an adequate and independent state ground justifying foreclosure of constitutional claims in habeas." *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir.2003); *Clement v. Kelly*, 1:13-CV-00389, 2013 WL 6048743 (N.D. Ohio Nov. 14, 2013).

**Actual Innocence.**  To be credible, a claim of actual innocence requires a showing of "new reliable evidence" and requires a showing of factual innocence, not mere legal insufficiency. *See Schulp v. Delo*, 513 U.S. 298, 324 (1995); *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) for the proposition that "actual innocence means factual innocence, not mere legal insufficiency") (internal quotations omitted). "[A] credible claim of actual innocence is extremely rare," S*ouler v. Jones,* 395 F.3d 577, 600 (6th Cir. 2005), and so "[t]he actual innocence exception should 'remain rare' and 'only be applied in the extraordinary case.'" *Id.* at 590 (quoting *Schlup v. Delo,* 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).  An "actual innocence claim…is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Souler*, 395 F.3d at 588-89.   A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt-or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt. *House v. Bell,* 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006).

Brown fails to meet the actual innocence standard.  First, Brown does not provide "new reliable evidence" and does not demonstrate factual innocence.  At most, Brown argues that he has new evidence relating to the mental health of Doss.  Doc. 1, p. 10.  The "new evidence" is a copy of a docket from a 2003 case against Doss, where Doss was referred to the court psychiatric clinic for a mental health evaluation.[15]  Doc. 12-3, pp. 3-4.  Brown contends that this evidence could have been used to impeach Doss.  Doc. 12, p. 16.   That contention does not come close to demonstrating Brown's actual innocence.

---

[15] Brown provides only a portion of that docket.

In fact, Brown fired his gun multiple times at Doss.   Doc. 9-1, p. 234.   At the state court level Brown's strategy had always been self-defense.  Doc. 9-1, p. 234.   Brown argues in his petition that he "raised the affirmative self-defense and defense of others when [he] was attacked in on  front yard, [he] protected his child and friends against this attack…"  Doc. 1, p. 8.  Thus, Brown's arguments are not based on the contention that he is factually innocent but that he is legally innocent because his actions were justified by the doctrine of self-defense.  The actual innocence exception does not apply to a claim of legal innoncence.  *Harvey v. Jones*, 179 F. App'x 294, 299 (6th Cir. 2006) (finding that an actual innoncen argument premised on self-defense is a legal, as opposed to factual, innocence argument.)  "The Supreme Court has made clear that the term 'actual innocence' means *factual,* as opposed to *legal,* innocence. *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Because Brown has no new evidence with which to demonstrate that he is factually innocent of the crimes for which he was convicted, he has not established a credible claim of actual innocence.   Accordingly, Brown's Grounds Five through Nineteen are procedurally defaulted.

### V. Conclusion and Recommendation

For the reasons stated above, Brown's grounds for relief are procedurally defaulted, not cognizable, and/or without merit.  Accordingly, the undersigned recommends that Brown's Petition for writ of habeas corpus (Doc. 1) be **DENIED**.

Dated: December 20, 2013

Kathleen B. Burke
United States Magistrate Judge

### **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).